Thank you, Your Honor. May it please the Court, Devin Burstein, on behalf of Mr. Torres. Your Honors, the weight of the authority on the hearsay issue is overwhelming. In virtually every other case, in every other circuit, the government has succeeded in arguing directly contrary to the argument it makes in this case, and directly in line with Mr. Torres's 9 times out of 10, perhaps 99 times out of 100, it is the government seeking to admit, and succeeding in admitting, inquiries of others to use against the defendant. That the shoe is now on the other foot doesn't mean that the law should change. Plainly, it should not. It's a great argument. Let me ask you this, though. You wanted to introduce Mr. Fernando's out-of-court conversations with your client, in which some sort of question or statement was made to your client about where to take the truck, either take somebody to the DMV office in San Ysidro, or a tire shop near there. What was the purpose for admitting that evidence? Devin Burstein The purpose for admitting that evidence, in terms of its relevance, it would go to the second key prong of any viable third-party culpability defense, in the context of a, quote-unquote, border bust scenario. It would show that Fernando had some designs on controlling the truck in the United States, so there's... So an assertion, and I hate to use the terms because those are obviously loaded terms, but in essence, is the purpose to show that Fernando was giving direction to Torres about where he was supposed to take the truck? Devin Burstein It's for the inference, but it is for the inference that Fernando wanted to control the truck in the United States, but it's not an assertion. It's his question, will you do, actually? Well, it comes in in the form of a question, but if I'm... I'm thinking about, well, then opinion for the D.C. Circuit, was it the Long case? Devin Burstein It was the Long case. Devin Burstein In which he said that we have to look at the intent of the declarant, and if the intent of the declarant is to direct movement by Torres, why is that not being admitted for the truth of the matter asserted, which is that it was Fernando who was calling the shots here as to where the drug load was supposed to go? Devin Burstein That question has two parts to it, as I see it, your honor. The first part is whether it's even a statement for purposes of the hearsay rule. The second part is whether it's offered for the truth of the matter, if it is a statement. Devin Burstein But aren't you offering it to prove that Fernando was telling Torres where to go? Devin Burstein Yes, but if I could quote from Jackson, and I know, Judge Murphy, you were on that case from the Tenth Circuit, the mere fact that the declarant conveyed a message with her question doesn't make the question hearsay. It's not the fact that we're using it for the inference. The question, will you go to the DMV? The truth of the matter... Or, will you take my friend to the DMV? The truth of the matter asserted in that question is that I have a friend who wants to go to the DMV. Plainly, in this case, that's not what it's being offered to show. Devin Burstein Right, it's a coded message, right, which we're all familiar with in drug cases. Devin Burstein No, your honor, it wouldn't... Yes, we are familiar with those, but this wasn't a coded message, nor was it offered for that purpose. Devin Burstein Well, if your theory is that Fernando is calling the shots, why isn't it a coded message to tell Torres where to take the truck? Devin Burstein Great question, because it's not him calling the shots to Torres. Torres is unknowing. It's used for the inference. We would use it for the inference to say, look, and now I'm going to... In parlance for the jury, you know, look, jury, ladies and gentlemen, this guy had designs on controlling the truck where its movements were so he could dupe our client into bringing it somewhere where the drugs were taken out. Ladies and gentlemen, I don't care if he wanted a friend to go to the DMV. The truth of the matter that he said, ladies and gentlemen, is irrelevant. Devin Burstein But didn't he... I mean, wasn't he suggesting that the truck needed to go to the tire shop because a tire shop would have the necessary tools and equipment to lift the bed of the truck off the chassis in order to get to the secret compartment? Isn't that how you're trying to link it up to why a tire shop would matter? No, your honor. Again, that was one... That was in the reply to a response to a different argument the government was making. It doesn't matter if Fernando says, can you go to Walmart and pick up a couch? Can you go to a tire shop? Can you go to McDonald's? But it does matter here by the means with which the contraband was concealed. What was unusual about this case is that it's not easy to retrieve the contraband because you actually have to physically take the bed of the pickup off the chassis in order to get to the access door. That's true, your honor, but the purpose doesn't make... Doesn't... The purpose in this particular case doesn't define the hearsay content. If I could... If I could point to Love... Counsel... Counsel Judge Gould, if I could interject because I don't want to take up all your time as it... It'd be helpful to hear rebuttal too. But what's bothering me on this case, so I want to make sure you address it, is that if the inquiry, you know, will you take the car to the DMV? Will you take the car to the tire shop? Is carrying with it an implied assertion? I want you to take the car to the DMV. I want... I want you to take the car to the tire shop. When we consider whether it's offered for truth, aren't we asking ourselves whether it's offered for the truth of the implied assertion that makes it relevant? Not for the truth of what could be a cover story about taking a friend. No, your honor. As the Sixth Circuit held in Rodriguez-Lopez, just to give you the direct quote, and I think it may be more persuasive than the way I could phrase it, the fact that an out-of-court... That out-of-court statements are being used to support a material inference does not by itself make them hearsay. It makes them relevant. And I think the best description, and I think really your question, your honor, and Judge Talman's questions are not different. And if I could point to the Seventh Circuit's description in Love, because for me that really is... They do an incredible job in explaining it. And if I could just quote, questions seek information but they convey information too. A speaker who asks, son, is it raining outside, clearly intends to get information about the weather. But the speaker also implicitly communicates information. For instance, that he or she is probably indoors, is interested in the weather, and has a son. This fact has led some commentators to argue that we should view both imperatives and questions as statements for purposes of the hearsay doctrine because both intentionally express and communicate ideas or information. The federal courts do not take this approach. We have held that questions are not statements and therefore are not hearsay. Our sister circuits agree. That is... If you say, in a drug case, you say, do you have this stuff? And your honor, you had referenced then Judge Clarence Thomas's decision. The questions there are, does he still have any stuff and can I pick up a 50? Yeah, but he's not focusing on the form of the communication. He's focusing, I think, on the intent of the declarant. And that is different. It doesn't matter whether the intent is communicated in the form of an affirmative statement or a question if the intent of the declarant is to make an assertion. That's right, but... And you're arguing for a rule that simply says if there's a question mark at the end, it's not hearsay and therefore it comes in. And I don't think it's quite that simple. I agree it's not that simple. And following that point, Judge, now Justice Thomas says, it is difficult to imagine any question or for that matter, any act that does not in some way can pay an implicit message. And I'm not saying simply sticking a question mark on the end because that's the Summers case that the government relies on. How'd you get here so quick? That's not the same kind of question. That is a question that's not designed to seek information. But what we have to look at, as your honor just noted, is the primary purpose. If your primary purpose is to elicit information, yes, I will take your friend. No, I will not take your friend. It's not an assertion. And the way we know it's not an assertion, and the case law says this throughout the circuits, is that it can't be proven true. So it's not the intent from the content, but it's the intent from the purpose of the message. It's what the message is seeking, Judge Murphy. And that would be your response then to Judge Gould. It doesn't matter what buried intents there are. It matters what he intended, the purpose for which he wanted to have control of the vehicle. Right. And that's also Judge Justice Thomas's point when he said, quoting, the crucial distinction under Rule 801 is between of whether they are expressed or implied. The intent, the express purpose of asking a question is to get an answer to that question. It is by nature what makes them questions. Mr. Bernstein, let me shift to the relevancy inquiry because we have an unusual situation here in that the district court had a complete preview of the testimony in the first trial. And when you offered it, or the government moved in limine to preclude it in the second trial, the district court said, I kept listening for a linkage to something that was relevant in the case. And the problem is that this conversation occurred 10 days before the load was intercepted at the border. And apparently the pickup had crossed the border a couple of times in between. And the court found, the court basically found it's just too remote. It's both hearsay and it's relevant because it's too remote. I didn't hear any connection here. Your Honor, the circuit precedent is absolutely clear. It's cited in our brief. That delay goes to wait. Well, it does to a point. But at some point, if the district court says, look, I heard a proffer of this testimony and it doesn't prove any fact one way or another in the case, is it an abuse of discretion for the district court to exclude it on that ground? It is, Your Honor. It's an absolute abuse of discretion under the Supreme Court's case in Coon because it's a misapplication of the law. The law is very clear that credibility and weight of the evidence is solely for the jury. But what the court is saying is that it doesn't, think of the word, explain or refute or clarify any fact that the jury has to decide here because there's just no linkage. It's like if we took it at its literal face value, Fernando asks Torres 10 days before Torres is arrested, would you take my friend Julio to the DMV in San Diego and Torres said no. Well, what does that have to do with the fact that 10 days later Torres is found with 73 kilograms of dope? If I could use Mr. Hoffman's words to answer your question, the whole point of offering the statements was that they were supposed to reveal what he, Fernando, truly wanted to happen with Mr. Torres' truck. Relevance, we know from the Supreme Court, from Daubert and from Tenard, that the basic standard of relevancy is a liberal one. It's a low threshold and this court in Crosby made the categorical statement. We start with the observation that fundamental standards of relevancy require the admission of testimony which tends to prove that a person other than defendant committed the crime that is charged. It's just a... But again, you're drifting into this per se area. You have to concede, even though it may go to the weight, there comes a point when you have to say there is no way it can affect the weight, that there has to be some line drawn. That's true, Your Honor, but in this case... And that's what the suggestion here is, is that 10 days is a good point to draw the line. Well, it wouldn't because we're not... Nobody is... The government has done an excellent job with that argument, but let me tell you, if I could, and I know I'm over my time, why, just to address your question, why that argument is a bit of misdirection. Clever misdirection, but misdirection nonetheless. There was no assertion, because it would be absurd, that this load of drugs was driven back and forth across the border for 10 days. The government says that and it's... Yes, it's a great straw man because it's an absurd argument. Well, it sounds a little absurd. Right, and so the argument was not that. This was not being used to show that he, 10 days ago, tried to control the truck. It was being used for the inference that this guy, Fernando, was making efforts to control the truck in the United States, and that's the argument that was made to the jury during the first trial's closing argument. Look, this guy had designs on controlling the truck. If you have designs, not you, Your Honor, if somebody has designs on controlling a truck, it makes it more likely that that person is the responsible third party. Why? Because that person not only has access in Mexico, but then has some idea about getting it out in the United States without... But you did get into evidence, the testimony with regard... I can't even pronounce the Mexican mechanic's name, but... Yeah. You don't have to, but okay, we know who we're talking about. Yes. And the fact that Fernando had borrowed the truck on at least four prior occasions and had a key and knew where the truck was parked. So, I realize you didn't get in all the evidence that you wanted to get in, but you clearly had evidence on which you could make that argument to the jury. But not the crucial part, and that's where the big difference was. Well, but if we decide it's hearsay, then it was properly excluded. If you decide it's hearsay, it was arguably properly excluded. There is the Supreme Court precedent, I believe it's in chambers, that talks about when it's a constitutional right to present a defense, courts cannot mechanistically apply, is the word they use, apply hearsay to defeat a defendant. But then we'd have to look at the reliability of the statement and so on. And of course, the problem is it is an out-of-court statement offered by a missing declarant who is not there to be cross-examined. And it comes from the lips of the defendant who obviously has a bias in terms of offering, trying to lay it off on somebody. In any event, I think we have your... If you want to give us a... No, Your Honor, I just wanted to respond to your question about the second, what I'm calling the second side of the coin. Yeah. Which is, Your Honor had posited that, I believe, and forgive me if I'm wrong, if there was still some evidence of third-party culpability that was able to get in, and isn't that essentially the bulk of what you wanted to get in? And I was responding that no, it isn't, because it's only one side of the coin and it doesn't do for the jury what you need. And coming from the Southern District of California, where third-party culpability defense is the bulk of deny knowledge. I mean, this is what the cases that are tried, Your Honor knows better than anybody. You've seen these day in, day out. The SODAT defense. Yeah. So the idea that you can't show who was going to have responsibility on the other side, that's why they put in value evidence, because they want to say, look, who would send this over the border? It's worth a million dollars. There's nobody who wants to get it out. That's why you need Fernando's questions, because they are the ones who, that's the only evidence that shows there was somebody to take that million dollars on the other side. Okay. Let's hear from Mr. Hoffman. Thank you, Your Honor. I'll give you some time in rebuttal. Thank you. Good morning. Kyle Hoffman for the United States. The district court didn't abuse its discretion in excluding this testimony, and there's a good reason why. The parties really are in agreement on the rules. There are two requirements for something to be hearsay and excluded. The first is that the intent of the declarant be that the statement be an assertion. And the second, that it be offered to prove the matter asserted. I think the real nub of the dispute is on the first issue, the intent of the declarant. And what I would say here is, what we've got in this case is a little different from the other cases that Mr. Burstein relies on. We've got the testimony of Mr. Torres himself, and that's what I'd put a lot of weight on in this case. He wanted me to take him to the DMV. Now, what I would suggest to the court is, that's Mr. Torres's, at the very least, his characterization, his inference, his belief as to what the questions, will you take my friend to the DMV, will you take him to the tire shop, meant. Well, then that suggests that it's, you're talking about effect upon hearer then, and it's not hearsay at all. No, Your Honor, I'm not. What I'm suggesting is, it couldn't, first of all, where everybody's in agreement, it couldn't be effect on the hearer. I thought that was agreed to, but that sounds to me like the path you're going down right now. No, no. What I'm trying to suggest is, as with many questions of intent, it's a question of inference. And what we have here is Mr. Torres inferring from the questions, he wanted me to go to the DMV. At the very least, I should step back and say, it's possible Mr. Fernando actually said, I want you to go to the DMV. Nobody pressed Torres and said, you say he wanted you to take him to the DMV. I thought it was a tire shop near the DMV. Well, DMV and tire shop, both, both. Well, I mean, I don't understand what the relevancy is of take me to the DMV. It, the idea is... Or take my friend, I guess it was, right? The idea is, I think everybody's in agreement on this too, is that it's showing that Fernando wants to direct where the car, the truck is going in the United States. And one point it's a DMV, another point it's a tire shop. All I'm suggesting is, where we have here, unlike the other cases, is some evidence of what the declarant's intent was. It's indirect evidence to be sure, but that happens all the time. Very rarely do you get a statement, well, that was my intent. And so, particularly where you have an abuse of discretion standard in the district court, and you have evidence of what Mr. Torres thought the intent of the questions was, he wanted me to take him to the DMV, he wanted me to take him to the tire shop. It could be no abuse of discretion for the district court to find, these questions were meant assertively, therefore they meet the first prong, they're offered for the truth of the matter asserted, therefore they meet the second prong, they should be excluded. That's the outline of my argument, and I think what separates, what I would put heavy emphasis on, what really separates this case from many of the others, is you have that evidence, you have that statement from Mr. Torres, he wanted me to take him to the DMV. That's at the very least how he interpreted those questions. So, what's our standard of review here? The district court properly identified that this was an issue implicating the hearsay rule, it applied the two prong test to the facts that were before it, and it can't be an abuse of discretion if the district court, which had heard the complete testimony in the first trial, then relied on that knowledge in making its ultimate ruling as to prongs one and two. Yes, with one caveat, Your Honor, and that's this, it's true that the parties didn't really identify the issue of the declarant's intent for the district court, and so the district court didn't say, I find on this record that Mr. Fernando Greasy, his questions actually had assertive intent, and therefore they meet the test. It didn't do that. Well, I mean, did you both brief this? Yes, but it was not nearly as extensive. I think Mr. Burstein would agree with me on this, the briefing was not nearly as in detail as the briefing here. Did the district court have the benefit, for example, of Justice Thomas's opinion in the D.C. Circuit? I think he may have, actually. I know he relied on an unpublished Ninth Circuit case, Rivera. Surely one of the focuses of the district court at the time is, is this assertive or is it not assertive? Well, the district court, yes, but the district court, the battle was really more over, is it being offered for the truth of the matter asserted? And I know Mr. Burstein's trying to make an argument that that wasn't the case. I think that that just doesn't fly. I mean, the whole point is offering it to prove that Fernando wanted the car or the truck to go here, there, or somewhere else. And the district court was emphatic that it's definitely being offered for the truth of that matter. That Fernando's the shot caller. Yes, Mr. Burstein keeps saying designs, he had designs. I mean, if it's not offered for that, then it's not relevant at all. That was the district court's point. So what you're saying is that when you take the rule that suggests to us by opposing counsel, is it, there's a overall purpose and a sub purpose. And if either one of those is assertive, then it's assertive conduct. Well, it's interesting, Your Honor, I heard Mr. Burstein use this term primary purpose, and I know that Long and some of the other cases talk about implicit and overt. I think here, because of the statement that I'm focusing on, he wanted me to take him to the DMV. I think it's not just implicit. It's not just secondary. It's that's the main point of the questions. I want you to go here, there, or elsewhere. Well, that's the umbrella purpose, but the subsidiary purpose, I want to go to the DMV one, or then I want to go to the mechanic shop. Right. But I don't think that matters in the end. It's a question of he has designs on where it goes, and that's what it's being offered for, and that was the intent of the questions. Meeting the two prongs, the intent of the questions were actually assertive. It was offered for the truth of the matter asserted, and then particularly on an abuse of discretion standard, the court was right. What about the relevancy issue? Here's what I would suggest, Your Honor. I think Judge Houston did a good job of this in the sense that what he understood was you have to be offering it for the truth of the matter asserted. Otherwise, it has no relevancy at all. You have to be offering it for the truth of Fernando wanted it to go X, Y, and Z. The argument below was a little bit, it didn't make any sense, was we just, on the defense side was we just offered it to show that it occurred. Well, so what? It has no relevance unless you're offering it to prove that Fernando wanted it to go here, there, or elsewhere. Now, I'd be happy to answer any questions the court has about the hearsay problem, but I would feel a little bit, well, I think I ought to address the harmlessness issue in case. And I think the main argument of counsel is, look, we've got two trials, and the outcome of one was one way, and the outcome of one was another way. And I would really urge the court that just because there was a hung jury in the first instance does not mean it was a closed case. Those of us who have been trial lawyers, juries go sideways for all kinds of reasons, not necessarily related to the merits of the case. And the Second Circuit case I cited, Newton recognizes that explicitly, point one. When you look at the evidence here, you've got, Mr. Torres was nervous not only on the day of, where his hands were shaking when he handed over the keys, but he was nervous on the day, August 11th, a few days prior. That's how the primary inspector noticed this in the first place. And his car was, his truck was modified, both on that date and prior. So it was modified three times in ways that were visible. There was testimony from everybody that modifications were visible. So he was nervous for a reason. His car had been modified. He had dope in it. He may have had dope in it earlier on. It wasn't easy to get this dope out. That's very clear. It took a lot. So this notion that somebody else sent it willy-nilly and was going to get it out easily, that just doesn't fly. It was very difficult. Then he never mentioned Fernando Griese at all in his post-arrest statement. This is something I think that has been not emphasized enough. This is cooked up for trial. It's very obvious. He talked about the mechanic, but Fernando never once appeared. And he was asked directly in his post-arrest, who's had control of your car? So all of that together, and that's just from the first trial. You get to the second trial, you get an expert who, I mean, torpedoed, exploded. I think he just backfired enormously on the defense case. And I think there was an argument made from counsel that, oh, that was all testimony from a previous trial. And a lot of it was. The problem is, all of that was substantive evidence. Why? Because it was from a trial. It was sworn testimony. What you're talking about is very rare, hardly ever happens. They get paid. They know. It makes no sense for them to go back and forth and be loaded beforehand. I mean, when you put all that together in the second trial, it was even more overwhelming than the first. And the first was overwhelming, despite a mistrial. That would be my position. So if the court has any questions, I'd be happy to try to answer them. But otherwise, we'd urge the court to affirm the district court. Mr. Gould, anything for Mr. Hoffman? Thank you. No questions. All right. Thank you, Mr. Hoffman. Bernstein? Candidly, I think the real fight here should be about harmless error. And I think Mr. Hoffman, to me, just looking back at Rodriguez-Lopez, where it was, I want some heroin. Can I get some heroin? Bring me some heroin. Not hearsay. If I say, your honor, Mr. Hoffman is wearing a red tie, that is an assertion that is true, false. Can I borrow your red tie? True, false? No, you can't say true or false. That's why it's not hearsay. That's why it's a question. It's fundamentally different. We believe the weight of the authority on this is not only overwhelming, but overwhelmingly correct. In this instance, you're not making an assertion. I know we wind up splitting words here, but that's what we do. I do agree with Mr. Hoffman, and he makes some good points, that really the focus here should be, maybe he doesn't agree with this, but I agree that the focus really should be on harmlessness. We see the case very differently. What's your response to his laundry list of incriminating evidence? I mean, that is pretty incriminating and considered cumulatively. Absolutely. And it was all presented to the first jury. Well, not all of it. You didn't have your defense expert who, and I agree with Mr. Hoffman, I blow up maybe a little too strong a word, but let's say it didn't work out as well as it could have for you. Your Honor, I think that Mr. Hoffman is quite skilled in the way he presented that testimony. I think a full read of that testimony, it was incredibly helpful. Well, it's helpful to say that blind mules are rarely used, and the only other instance he could think of was maybe one media report where the drugs were hidden with something other than magnets. I mean, this was a pretty sophisticated hidden compartment. It was, and he said that several years later he had said they were very rare, but he also for the first time provided the jury with all of the myriad reasons why a cartel would use a blind mule. And there are a lot of reasons, and they're very good reasons. For example, you don't have to split the money. You don't have somebody who can snitch. You don't have somebody who can decide to sell the load to the highest bidder on the other side. So there are a lot of reasons, and I believe if you read the testimony in full, it doesn't torpedo it. And all of the other, the laundry list of evidence was presented at the first trial, and I would point to- I guess the problem I'm having is that to hang your hat on the proposition that there was a hung jury in the first trial and a conviction in the second trial, that's what bothers me, because I've been there. And you don't know what juries, why juries do what they do. That's true, Your Honor, and my- It only takes one. It only takes one, and, but that still goes for harmlessness now. It only takes one, but I don't hang my hat on it so much as I'm using it as a tool to show that this wasn't an overwhelming case. It was close. And when you have a close case, that's, I'm not hanging my hat on harmlessness. I'm just trying to illustrate it was closer than the government's trying to make it seem. And when you have a close case in the first time, and the second time you're not allowed to put what we truly believe is necessary, flip side of the third-party culpability defense, remember, the government can't meet its burden to prove harmlessness regardless of the standard. It's not our burden to prove to the court that this error, assuming you agree it's error, was prejudicial. It's the government's burden to prove harmlessness. And they can't hear because it's critical third-party culpability evidence. No, I'm not, you know, I keep thinking about the, you know, the fact that the physical modification to the pickup was obvious to the first customs inspector who made the entry into techs or whatever the computer system is these days. Yes, Your Honor. And there was testimony by your client that he was upset with the paint job that had been done by the Tijuana mechanic. It's pretty hard to believe if he'd walked around the pickup at the back end that he couldn't have seen what had been done under your theory by Fernando and his henchmen. And I mean, you know, juries bring a lot of common sense, as we all know, to an evaluation of that kind of proof. That's right, Your Honor. And they had it in the first trial. Well, yes, but you have two different sets of juries. And, you know, it's not infrequently that one person on one of those juries wants herbal tea rather than black coffee. That's also true, Your Honor. But rather than hypothesize what the differences could have been, I'm pointing to this court to a difference that actually was. And these are the Fifth and Sixth Amendment rights of the defendant. These are the constitutional rights of the defendant. Why shouldn't the defendant get his shot to put on his case? The defendant is going to jail. You see, you weren't deprived of a theory of defense. You were deprived of a little bitty, perhaps insignificant, piece of the theory of defense. And we think it is key to the third-party culpability defense. And I think the trial counsel did it better than I'm perhaps doing it now in her explanation. What's important here is not what Fernando requested or what he was asking Mr. Torres to do, but simply the fact that Fernando asked Mr. Torres to take his truck into the United States to cross that border by himself and go to a location in the United States that Fernando had preselected. So whether or not Mr. Torres followed through makes no difference. The issue is that Fernando attempted to exercise his dominion and control over Mr. Torres's car. We had it the first time. Mr. Torres was permitted to put on his case the first time there was a hung jury. He was not permitted to put on his case the second time. It's his right. He's doing 121 months in jail. And for that reason, we're not asking to vacate the conviction and dismiss the indictment. All we want is another trial. I think we have your point. Thank you both. Thank you for letting me go over. It's kind of an intriguing evidentiary issue. The case just argued is.
judges: Murphy, Gould, Tallman